## JIM'S, INC., APPELLANT, V. JOHN M. WILLMAN, JR., APPELLEE.

527 N.W.2d 626

Filed February 17, 1995.   No. S-93-585.

David A. Domina and, on brief, Thomas E. Stine, of Domina & Copple, P.C., and Kathryn L. Mesner, of Mesner & Mesner Law Firm, for appellant.

James A. Beltzer, of Luebs, Beltzer, Leininger, Smith & Busick, for appellee.

HASTINGS, C.J., WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ.

HASTINGS, C.J.

This was an action in conversion brought by Jim's, Inc., against John M. Willman, Jr., a former employee. Jim's appeals from the order of the district court which sustained Willman's motion for summary judgment.

## STANDARD OF REVIEW

In review of a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *First Nat. Bank in Morrill v. Union Ins. Co.*, 246 Neb. 636, 522 N.W.2d 168 (1994). Summary judgment is granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts. *Id.*

A party moving for summary judgment must produce sufficient evidence to demonstrate that it is entitled to judgment as a matter of law if the evidence presented for summary judgment remains uncontroverted. *Lindsay Mfg. Co. v. Universal Surety Co.*, 246 Neb. 495, 519 N.W.2d 530 (1994). After the moving party has shown facts entitling it to judgment as a matter of law, the opposing party has the burden to present evidence showing an issue of material fact which prevents a judgment as a matter of law for the moving party. *Double K, Inc. v. Scottsdale Ins. Co.*, 245 Neb. 712, 515 N.W.2d 416 (1994).

## ASSIGNMENTS OF ERROR

Jim's assigns as error that the trial judge erred in (1) sustaining Willman's second motion for summary judgment, (2) overruling Jim's motion for the judge to recuse himself, and (3) reinstating himself without explanation as to how he resolved any prior prejudice.

## FACTS

Jim's, a retail grocery and variety store, filed a second

amended petition alleging that Willman, an employee of Jim's from November 1986 to November 1989, converted inventory on a weekly basis from Jim's grocery store to Willman's Bottle Market and sold or utilized the inventory for personal gain. Jim's claimed $176,271 in damages based upon the calculated difference in gross profit margins from the time period Willman worked for Jim's and the time period after Jim's fired Willman.

On August 19, 1992, prior to trial, the Honorable James Livingston, judge of the district court for Hall County, recused himself from the case without explanation. On September 4, Judge Livingston, without an express reinstatement order, scheduled a pretrial conference and continued to preside over the case. Neither party objected to Judge Livingston's continuing involvement despite the earlier recusal order.

On December 9, Willman moved for summary judgment. The evidence introduced in connection with that motion was voluminous and consisted of affidavits, depositions, answers to interrogatories, tax returns, canceled checks, ledgers, and other documents, 100 exhibits in all.

On January 14, 1993, the trial court overruled Willman's motion for summary judgment, but directed the case to proceed only upon direct evidence of conversion of property or circumstantial evidence showing that conversion was not merely possible but reasonably probable.

On March 31, Willman filed a motion in limine seeking an order requiring that Jim's not refer to any evidence of boxes placed into Willman's vehicle where the inventory inside the box could not be identified. At a hearing on Willman's motion in limine, several additional exhibits were filed. The court overruled the motion in limine on grounds that the evidence was admissible to prove motive, opportunity, and intent. The court also stated that it would entertain a second motion for summary judgment because the exhibit offered by Jim's proved Willman made restitution on the only properties belonging to Jim's that Jim's successfully traced to Willman.

As a result, Willman filed a second motion for summary judgment. At the hearing on the motion for summary judgment, Jim's moved the judge to recuse himself because the judge was predisposed to a summary judgment motion prior to its filing.

The judge overruled the motion, explaining that he denied Willman's previous motion for summary judgment because Jim's could trace approximately 67 cartons of cigarettes allegedly converted by Willman from Jim's inventory. According to the judge, however, the new exhibit showing that restitution had been made in regard to the approximately 67 cartons of cigarettes negated any cause of action. The judge stated: "I have prejudged this, but solely based upon the facts of what's been presented by argument of both counsel on the record." The judge further stated that "it's been prejudged because it's been preargued, pretried, prebriefed and everything else." In opposition to Willman's motion for summary judgment, Jim's offered Willman's Bottle Market's income tax returns and financial records.

On June 23, 1993, the district court entered orders denying Jim's motion for recusal and sustaining Willman's second motion for summary judgment.

## ANALYSIS

We address assignments of error Nos. 2 and 3 because they are interrelated and are dispositive of this appeal.

Jim's first argues that the court erred because the trial judge recused himself and then, without explanation or order lifting the recusal, continued to hear the case. In *Drainage District No. 1 v. Suburban Irrigation District*, 139 Neb. 460, 467, 298 N.W. 131, 134–35 (1941), this court stated:

> In addition, in the instant proceeding, it is disclosed that the case was regularly set down for trial at the regular May, 1940, term of the court; the district court regularly convened; the case was called; the issues completed in open court; both parties announced themselves ready for trial; the defendant then presented no challenge to the competency of Judge Tewell to preside and hear this contest, and no question was raised in reference thereto until after the trial was had and the decree rendered. If there was a valid objection to Judge Tewell's right to preside, it certainly had been waived by this conduct of the defendant.

We therefore conclude that a party may be said to have

waived his or her right to obtain a judge's disqualification when the alleged basis therefor has been known to the party for some time, but the objection is raised in an untimely fashion, well after the judge has participated in the proceedings. See, *In re Disqualification of Pepple*, 47 Ohio St. 3d 606, 546 N.E.2d 1298 (1989); *Singleton v. State*, 173 Ind. App. 606, 364 N.E.2d 1041 (1977).

However, in the second circumstance, the trial judge openly invited the defendant to file an additional motion for summary judgment and for all intents and purposes indicated how he would rule. Jim's timely moved to recuse the trial judge, which motion was overruled.

"We are aware that generally a ruling of the trial court on a motion to disqualify the trial judge is immaterial on appeal to the Supreme Court where the case is an action in equity triable de novo." *Franks v. Franks*, 181 Neb. 710, 715, 150 N.W.2d 252, 255 (1967). However, we are more concerned with how the litigant perceives the practice which was employed by the trial judge in this instance.

We recognize that in an effort to expedite litigation, a trial judge may on occasion hasten the process along by suggesting to one party that he or she will favorably entertain a particular pleading. Nevertheless, that practice is to be discouraged. A judge must be impartial, his or her official conduct must be free from even the appearance of impropriety, and a judge's undue interference in a trial may tend to prevent the proper presentation of the cause of action. *Id*. A judge must be careful not to appear to act in the dual capacity of judge and advocate. *State v. Brown*, 124 Ariz. 97, 602 P.2d 478 (1979).

Although it is generally true that a motion requesting a judge to recuse himself or herself is addressed to the discretion of that judge and an order overruling such motion will be affirmed on appeal unless the record establishes bias or prejudice as a matter of law, *State v. Richter*, 240 Neb. 913, 485 N.W.2d 201 (1992), nevertheless, in this instance and under these circumstances, the judge should have recused himself from hearing the second motion for summary judgment.

The judgment of the district court is reversed, and the cause is remanded for further proceedings with directions that the trial

judge recuse himself from the case.

REVERSED AND REMANDED WITH DIRECTIONS.

CAPORALE, J., concurring.

Although I agree with the judgment reached by the majority, I write separately because experience has taught that the use of soft and ambiguous language more often than not leads to confusion and the need to answer even more difficult questions later on.

The practice of a judge suggesting to one party that a particular pleading will be entertained favorably must not only "be discouraged," it is to be condemned and prohibited. As the majority opinion itself acknowledges, a judge must not only be impartial but must appear to be so. *Pitt v. Checker Cab Co.*, 217 Neb. 600, 350 N.W.2d 507 (1984) (actions of trial judge should never be such as to warrant any assertion that judge assisted party).

It is worth remembering that Canon 2 of the Nebraska Code of Judicial Conduct requires that a judge avoid impropriety and the appearance of impropriety in all activities and that Canon 3 thereof requires that a judge perform judicial duties impartially. How either the reality or the appearance of impartiality can be achieved when a judge joins forces with a party by telling it how to try the case so as to achieve a favorable ruling completely escapes me.

As observed in *Franks v. Franks*, 181 Neb. 710, 715–16, 150 N.W.2d 252, 256 (1967):

"A proper administration of the law demands not only that judges refrain from actual bias but also that they avoid all appearance of unfairness. All doubt or suspicion of bias should be jealously guarded against and, if possible, completely eliminated; and, when the circumstances and conditions surrounding a litigation are of such nature that they might cast doubt on the impartiality of any judgment the judge may pronounce, the judge should certify his disqualification. Thus disqualification of a particular judge for bias or prejudice, although not technically required by the circumstances, is sometimes proper in order to dispel any thought or suspicion that the litigants may not be receiving impartial justice . . . ."

"[T]he right to a fair trial is the 'foundation stone upon which our present judicial system rests,' and . . . there is an indispensable right to trial presided over by a judge who is 'impartial and free of bias or prejudice.' " *State v. Brown*, 124 Ariz. 97, 99, 602 P.2d 478, 480 (1979). Accordingly, a "judge must be careful never to act in the dual capacity of judge and advocate." *Id.* at 100, 602 P.2d at 481.

Once facts have been set forth that create a reasonable inference that a judge has a particular bent of mind which will prevent the judge from dealing fairly with the party seeking recusal, it is incumbent upon the trial judge to recuse himself or herself. *Wright v. District Court*, 731 P.2d 661 (Colo. 1987).